James Papakirk (0063862)
Flagel & Papakirk, LLC
50 E Business Way
Suite 410
Cincinnati, OH 45241
jpapakirk@fp-legal.com
Phone: (513) 287-8946
Fax: (513) 984-8118

William D. Marler (*pro hac vice* motion to be filed)
R. Drew Falkenstein (*pro hac vice* motion to be filed
Marler Clark LLP PS
1301 Second Avenue
Suite 2800
Seattle WA 98101
bmarler@marlerclark.com
dfalkenstein@marlerclark.com
Phone: (206) 346-1890
Fax: (206) 345-1898

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(AT CINCINNATI)

| | |
|---|---|
| Constance C. Georgostathis, Agent for Angeliki S. Christofield, on behalf of Angeliki S. Christofield | ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) **COMPLAINT FOR DAMAGES** ) |
| Dole Fresh Vegetables, Inc., a Division of Dole Food Company, Inc., a foreign Corporation, | ) JURY DEMAND ENDORSED HEREON ) ) ) |
| Defendant | ) ) |

COMES NOW plaintiff, agent for and on behalf of Angeliki S. Christofield, by and through her attorneys of record, and for her Complaint against the above-named defendant complains, alleges, and states as follows:

# I. PARTIES

1.1 Constance C. Georgostathis, agent for and on behalf of Angeliki S. Christofield ("plaintiff"), is now, and was at all times material hereto, a resident of Warren County, Ohio, and is therefore a Citizen of the State of Ohio and the Southern District of the Court. Ms. Georgostathis is the natural adult daughter of and agent for Angeliki S. Christofield ("Mrs. Christofield"), a resident of Hamilton County, Ohio and citizen of the State of Ohio and the Southern District of the Court. Plaintiff brings suit on behalf of Mrs. Christofield pursuant to the authority granted to her under a Durable Power of Attorney and the Uniform Power of Attorney Act adopted by Ohio.

1.2 The defendant, Dole Food Company, Inc. ("Dole" or "defendant"), is a corporation organized and existing under the laws of the State of Delaware, with its corporate headquarters located in the State of California. Dole Fresh Vegetables, Inc. is a division of Dole, and thus a mere extension of it. Dole is authorized to do, and in fact does, business in the State of Ohio and the Southern District of the Court.

# II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, and because this action is one between citizens of different States. More specifically, Dole is a citizen of both California and Delaware, while the plaintiff is a citizen of Ohio.

2.2 Venue in the present judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events giving rise to the plaintiff's claims occurred here, and because the defendant was subject to personal jurisdiction in this district at the time that this action was commenced.

### III.  FACTS

3.1  Since July 5, 2015, at least eighteen people in the United States have been infected with *Listeria* as a result of their consumption of *Listeria*-contaminated leafy green products produced by the defendant at its processing facility in Springfield, Ohio.

3.2  The number of ill people reported from each state is as follows: Connecticut (1), Indiana (1), Massachusetts (1), Michigan (4), Missouri (2), New Jersey (1), New York (5), Ohio (2), and Pennsylvania (1).

3.3  Whole genome sequencing has been performed on clinical isolates from all ill people and has shown that the isolates are highly related genetically. *Listeria* specimens were collected from ill people between July 5, 2015 and January 31, 2016. Ill people range in age from 3 years to 83, and the median age is 66. Seventy-two percent of ill people are female. All 18 (100%) ill people were hospitalized, including one person from Michigan who died as a result of listeriosis. One of the illnesses reported was in a pregnant woman.

3.4.  In Canada, there are currently 11 cases of *Listeria* in five provinces related to this outbreak: Ontario (7), Quebec (1), New Brunswick (1), Prince Edward Island (1), and Newfoundland and Labrador (1). Individuals became sick between May 2015 and early January 2016. Some of the individuals who became ill have reported eating packaged salads. These salads were produced at the Dole facility in Ohio. The majority of Canadians cases (55%) are female, with an average age of 79 years. All cases have been hospitalized, and three people have died.

3.5  On January 27, 2016, defendant voluntarily recalled all salad mixes produced in the Springfield, Ohio processing facility. At this time, there is no evidence to suggest that any products produced at other Dole processing facilities in the United States are linked to illness. The type of salad mixes produced at this facility was packaged in bags and plastic clamshell

containers and can be identified by the letter "A" at the beginning of the manufacturing code on the package.

### Prior Dole Outbreaks and Recalls Linked to Lettuce and Other Leafy Greens

3.6     **October 13, 2015** – Dole Fresh Vegetables voluntarily recalled a limited number of cases of bagged salad. The product recalled was Dole Spinach coded A27409B & A27409A, with an Enjoy By date of October 15 and UPC 7143000976 due to a possible health risk from *Salmonella*. No illnesses had been reported in association with the recall.

3.7     **March 13, 2014** – Dole Fresh Vegetables voluntarily recalled a limited number of cases of bagged salad. The recalled products included Dole Italian Blend (UPC 7143000819), Fresh Selections Italian Style Blend (UPC 1111091045), Little Salad Bar Italian Salad (UPC 4149811014) and Marketside Italian Style Salad (UPC 8113102780) coded A058201A or B, with Use-by date of March 12, 2014 due to a possible health risk from *Listeria monocytogenes*. No illnesses had been reported in association with the recall.

3.8     **August 22, 2012** – Dole Fresh Vegetables voluntarily recalled 1,039 cases of bagged salad. The recalled product was 10 oz. Dole Italian Blend coded 0049N2202008, with a Use-By date of August 20 and UPC 7143000819, and was recalled due to possible contamination by *Listeria monocytogenes*. No illnesses had been reported in association with the recall.

3.9     **June 22, 2012** – Dole Fresh Vegetables voluntarily recalled 1,077 cases of bagged salads. The recalled products included Kroger Fresh Selections Greener Supreme coded N158 211B 1613 KR04 with Use-by date of June 19 and UPC 11110 91039, Kroger Fresh Selections Leafy Romaine coded N158 111B KR11 with Use-by date of June 19 and UPC 11110 91046 and WalMart Marketside Leafy Romaine coded N158111B with Use-by date of June 19

and UPC code 81131 02781 due to a possible health risk from *Listeria monocytogenes*. No illnesses were reported in association with the recall.

3.10    **April 14, 2012** – Dole Fresh Vegetables voluntarily recalled 756 cases of DOLE® Seven Lettuces salad with Use-by Date of April 11, 2012, UPC code 71430 01057 and Product Codes 0577N089112A and 0577N089112B, due to possible contamination by *Salmonella*. No illnesses had been reported in association with the recall.

3.11    **Sept. 17, 2007** – Dole Fresh Vegetables recalled all salad bearing the label "Dole Hearts Delight" sold in the U.S. and Canada with a "best if used by (BIUB)" date of September 19, 2007, and a production code of "A24924A" or "A24924B" stamped on the package. No illnesses were associated with the recall, but the recall occurred because a sample in a grocery store in Canada was found through random screening to contain *E. coli* O157:H7.

3.12    **2006 Spinach *E. coli* Outbreak – 205 Sick with 5 Deaths:** Dole baby spinach was identified as the cause of an *E. coli* O157:H7 outbreak that caused at least 205 illnesses and 5 deaths.  Early statistical analysis had suggested that many brands were implicated, but the spinach sold under the several brand names had all come from the Natural Selection Foods processing center in San Juan Batista, California. Accordingly, Natural Selection recalled all of its spinach products with "use by" dates from August 17 to October 1, 2006.  The recall, of course, included Dole brand spinach. But further data and study ultimately narrowed the possible sources of the outbreak down to one brand of packaged greens: Dole. Though epidemiological evidence had already strongly linked Dole to the outbreak, the FDA found the proverbial "smoking gun" on September 20, 2015. The bag of Dole baby spinach had been purchased and consumed by an Albuquerque, New Mexico woman, and testing by the New Mexico State

Health Department had confirmed that the product was contaminated with *E. coli* O157:H7 bearing the same genetic marker as the outbreak strain. Ultimately, the FDA confirmed over 200 outbreak-related cases, with 102 hospitalizations, thirty-one cases of HUS, and three deaths, though the actual number of people affected by the outbreak was certainly much larger.

3.13 **2005 Lettuce *E. coli* Outbreak – 32 Sick:** Case control study data gathered during epidemiological investigation into a large, multi-state cluster of *E. coli* O157:H7 illnesses showed a statistically significant association between illness and consuming Dole pre-packaged lettuce. Eventually, a total of 32 persons from three states would be linked to the *E. coli* O157:H7 outbreak.

### The Plaintiff's *Listeria* Infection

3.14 Prior to her Listeriosis illness, Angeliki "Kiki" Christofield was a 77-year-old mother and grandmother. She is widowed. Mrs. Christofield lived independently and managed all of her own affairs. She also worked in various capacities voluntarily and professionally, including as a medical and legal translator, and was intimately involved in the local Greek community.

3.15 On or about January 20 and 21, 2016, Mrs. Christofield consumed portions of a Dole prepackaged salad mix produced at Dole's Springfield, Ohio processing facility. Mrs. Christofield's daughter, Plaintiff Constance C. Georgostathis, had purchased the product at a Kroger store location in the Cincinnati area in the days before Mrs. Christofield consumed it.

3.16 The Dole salad product that Mrs. Christofield consumed on these dates was contaminated by a strain of *Listeria* indistinguishable from the strain involved in the recent *Listeria* outbreak linked to Dole salad products produced at the Springfield, Ohio processing

6

facility. Mrs. Christofield's consumption of the contaminated lettuce caused her to become infected by *Listeria*.

3.17 Testing by the Ohio Department of Health on the same bag of Dole prepackaged salad mix that Mrs. Christofield had consumed showed that it was positive for *Listeria*.

3.18 Mrs. Christofield began to feel unwell on or about January 23 or 24, 2016. By the evening of January 26, 2016, she had developed extreme head and neck pain, and also began to suffer from confusion and altered mental status.

3.19 The following morning, Mrs. Christofield was taken by ambulance to Bethesda North Hospital in the Cincinnati area. She was treated with narcotic painkillers, and ultimately discharged home.

3.20 Over the course of the next several days, Mrs. Christofield's condition continued to deteriorate. On January 31, 2016, she was again taken by ambulance to Bethesda North Hospital. On the same date, Mrs. Christofield fell into a coma.

3.21 Throughout the month of February 2015, Mrs. Christofield remained comatose. In recent days, she has been able to open her eyes and occasionally gives a slight response to verbal stimuli by shaking or nodding her head. Mrs. Christofield is still unable to move her legs, but has shown the ability to slightly move one hand.

### IV. CAUSES OF ACTION
### COUNT I – Product Liability

4.1 Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.

7

4.2     At all times relevant to this action and the allegations herein, the defendant was a manufacturer within the meaning of the Ohio Product Liability Act, R.C. §2307.71 et seq.

4.3     The defendant manufactured the prepackaged salad product that caused Mrs. Christofield's *Listeria* infection.

4.4     The prepackaged salad caused Mrs. Christofield's infection and related illness and injuries. This prepackaged salad was a "product" within the meaning of R.C. §2307.71 (A)(12)(a), because it was capable of delivery itself; it was produced, manufactured, and supplied for introduction into trade or commerce; and it was intended for sale to persons for commercial and personal use.

4.5     The product that caused Mrs. Christofield's infection and related illness and injuries was, at the time that it left the defendant's control, defective within the meaning of R.C. §2307.73 (A)(1). More specifically, the product was unreasonably dangerous for its ordinary and expected use, because it contained *Listeria*, a potentially deadly pathogen.

4.6     The product was delivered to Mrs. Christofield without any change in its defective condition, and she used the product in the manner expected and intended by consuming it.

4.7     The product was defective in both manufacture and construction because it contained *Listeria*.

4.8     The product was defective because it did not contain any warning or instruction stating that it should not be consumed by human beings due to its contamination by *Listeria*.

4.9 Mrs. Christofield's *Listeria* infection and related illness and injuries occurred as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that was manufactured, distributed, and sold by defendant.

**COUNT II – Negligence**

4.10 Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.

4.11 Defendant owed a duty to its consumers to use reasonable care in the manufacture of its food products, and to prevent or eliminate the risk that its food products would be contaminated with *Listeria*, or any other similarly deadly pathogen. Defendant breached this duty.

4.12 Defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of the food products, but failed to do so, and is therefore negligent.

4.13 Mrs. Christofield is among the class of persons designed to be protected by these statues, laws, regulations, safety codes or provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.14 Defendant owed a duty to its consumers to properly supervise, train, and monitor its employees and agents, and to ensure that its employees and agents complied with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so and was therefore negligent.

4.15 Defendant owed a duty to its consumers to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise

complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but failed to do so and was therefore negligent.

4.16  Mrs. Christofield's *Listeria* infection and related illness and injuries occurred as a direct and proximate result of the Defendant's acts of negligence.

### COUNT III – Negligence per se

4.17  Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.

4.18  The food that defendant manufactured and sold, and that caused Mrs. Christofield's *Listeria* infection and related illness and injuries, was adulterated within the meaning of the Pure Food and Drug Law of Ohio, R.C. §3715.59(A).

4.19  Defendant violated R.C. §3715.52(A)(1), by its manufacture and sale of adulterated food.

4.20  The Pure Food and Drug Law of Ohio establishes a positive and definite standard of care in the manufacture and sale of food, and the violation of this law constitutes negligence per se.

4.21  Mrs. Christofield is among the class of persons designed to be protected by these statues, laws, regulations, safety codes or provisions pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.22  Mrs. Christofield's *Listeria* infection and related illness and injuries occurred as a direct and proximate result of the Defendant's violation of the Pure Food and Drug Law of Ohio.

**COUNT IV – Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq.**

4.23　Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.

4.24　Defendant is a "supplier" as that term is defined in R.C. 1345.01(C).

4.25　Mrs. Christofield is a "consumer" as that term is defined in R.C. 1345.01(D).

4.26　Defendant's acts and practices, as described above, were unfair or deceptive acts or practices in connection with a consumer transaction, in violation of R.C. 1345.02, in that defendant, among other things, represented the food that defendant manufactured and sold, and that caused Mrs. Christofield's *Listeria* infection and related illness and injuries:

(a) had performance characteristics, uses, or benefits that it did not have;

(b) was of a particular standard or quality that it was not; and

(c) had been supplied in accordance with previous representations, when it was not.

4.27　As a direct and proximate result of defendant's violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq., plaintiff is entitled to damages as set forth in R.C. 1345.09, trebled, including noneconomic damages, attorney's fees and expenses.

**COUNT V – Uniform Commercial Code, R.C. 1302.01, et seq.**

4.28　Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.

4.29　Defendant is a "seller" and a "merchant" as those terms are defined in R.C. 1302.01(A)(4) and (5).

4.30    Defendant made express and/or implied warranties about the food that defendant manufactured and sold, and that caused Mrs. Christofield's *Listeria* infection and related illness and injuries including, but not limited to the following:

(a) affirmations of fact or promise which related to the goods and became part of the basis of the bargain;

(b) a description of the goods that became part of the basis of the bargain;

(c) that the food items were merchantable, as defined in R.C. 1302.27, in that they would pass without objection in the trade, were fit for the ordinary purpose for which they were sold, were adequately contained, packaged and labeled, and conformed to promises or affirmations of fact on the container; and

(c) that the food items were fit for the purpose for which they were purchased, as defined in R.C. 1302.28, in that defendant had reason to know that they would be consumed and that Mrs. Christofield would rely on defendant's skill or judgment to furnish suitable goods.

4.31    Defendant breached the express and/or implied warranties it made because it manufactured and sold food items that caused Mrs. Christofield's *Listeria* infection and related illness and injuries.

4.32    Mrs. Christofield is a third-party beneficiary of the express and/or implied warranties made by defendant because, as set forth in R.C. 1302.31, she is a natural person who is in the family or household of plaintiff, who purchased the food items at issue, and it was reasonable to expect that Mrs. Christofield would use, consume, or be affected by the goods, and she was injured in person by breaches of the warranties.

4.33    As a direct and proximate result of defendant's breaches of express and/or implied warranties, plaintiff is entitled to damages.

## V.    DAMAGES

5.1    Plaintiff incorporates by reference each of the foregoing allegations as if fully rewritten and restated herein.  As to each Count of her Complaint, plaintiff alleges damages as set forth below.

5.2    Mrs. Christofield has suffered general, special, incidental, statutory, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount which shall be fully proven at the time of trial.  These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; past medical and medical-related expenses; future medical and medical-related expenses; travel and travel-related expenses, both past and future; lost wages; emotional distress, past and future; pharmaceutical expenses, past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

5.3    For Mrs. Christofield's injuries, Plaintiff is also entitled, pursuant to statute, to additional relief including, but not limited to, treble damages and an award of attorneys' fees pursuant to O.R.C. §1345.09 and other applicable laws.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, as agent for and on behalf of Mrs. Christofield, prays for judgment against defendant as follows:

A.    Compensation in excess of $75,000 for all general, special, incidental, and consequential damages suffered by Mrs. Christofield  as a result of the defendant's conduct;

B. Statutory prejudgment interest;

C. Treble damages, pursuant to statute;

D. An award of reasonable attorneys' fees and costs, to the fullest extent allowed by law including, but not limited to, O.R.C. §1345.09(f); and,

E. All such additional and further relief as this Court deems just and equitable.

### VII. JURY DEMAND

Plaintiff, through counsel, hereby demands a trial by jury on all issues so triable.

          */s/ James Papakirk*
James Papakirk (0063862)
Gregory E. Hull (0023520)
Flagel & Papakirk, LLC
50 E Business Way
Suite 410
Cincinnati, OH 45241
jpapakirk@fp-legal.com
Phone: (513) 287-8946
Fax: (513) 984-8118

William D. Marler (*pro hac vice* motion to be filed) and
R. Drew Falkenstein (*pro hac vice* motion to be filed)
Marler Clark LLP PS
1301 Second Avenue
Suite 2800
Seattle WA 98101
bmarler@marlerclark.com
dfalkenstein@marlerclark.com
Phone: (206) 346-1890
Fax: (206) 345-1898

Attorneys for Plaintiff